**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**


**LEVELL H. DOUGHTY (DOC # 95150)**                    **CIVIL ACTION**

**VERSUS**                                             **17-1377-SDD-EWD**

**JAMES LEBLANC, ET AL.**

<u>**NOTICE**</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on August 28, 2018.


**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**LEVELL H. DOUGHTY (DOC # 95150)**                    **CIVIL ACTION**

**VERSUS**                                                              **17-1377-SDD-EWD**

**JAMES LEBLANC, ET AL.**

## REPORT AND RECOMMENDATION ON MOTION TO DISMISS

Before the Court is a Motion to Dismiss[1] filed by defendants, Secretary James LeBlanc, Dr. Raman Singh, Dr. Preety Singh, Nurse Wanda Dupuy, and Nurse Elizabeth Britton (collectively, "Defendants").  Plaintiff, Levell Doughty ("Plaintiff") has filed an opposition memorandum.[2]  For the reasons set forth herein, the undersigned **RECOMMENDS**[3] that the Motion to Dismiss be **GRANTED IN PART** and **DENIED IN PART**.

Specifically, the undersigned **RECOMMENDS** that the Motion to Dismiss be **DENIED** as to the § 1983 claims against defendants Dr. Preety Singh, Nurse Wanda Dupuy, and Nurse Elizabeth Britton in their individual capacities.

The undersigned **FURTHER RECOMMENDS** that the Motion to Dismiss be **GRANTED**: (1) dismissing all § 1983 claims brought against all defendants in their official capacities with prejudice; and (2) dismissing the § 1983 claims against defendants Dr. Raman Singh and Secretary James LeBlanc in their individual capacities without prejudice.

The undersigned **FURTHER RECOMMENDS** that, in the event that this Report and Recommendation is adopted, Plaintiff be granted a period of twenty-one (21) days from the date

---

[1] R. Doc. 10.

[2] R. Doc. 16.

[3] On July 26, 2018, the District Judge referred the Motion to Dismiss to the undersigned.  Pursuant to 28 U.S.C. § 636(b)(1)(A), the undersigned has issued this Report and Recommendation.

of such adoption to file a Motion to Amend his Complaint to address the deficiencies noted herein with regard to the individual capacity claims against Dr. Raman Singh and Secretary James LeBlanc.

**I.     Background**

On October 24, 2017, Plaintiff, an inmate in the custody of the Louisiana Department of Corrections ("DOC") filed a Complaint under the Civil Rights Act 42 U.S.C. § 1983 (the "Complaint").[4]  Plaintiff alleges violations of 42 U.S.C. § 1983 and § 1988, as well as state law claims based on Louisiana Civil Code article 2315 (the general negligence provision),[5] on the basis that Plaintiff has been denied adequate medical treatment for Hepatitis C.

Plaintiff alleges that following his arrival at Elayn Hunt Correctional Center in 2005 and the completion of blood work, he was diagnosed with Hepatitis C.[6]  Plaintiff contends that he "was placed on medication [Interferon plus Ribavirin for sixteen (16) weeks.  By the 16th week, Plaintiff was taken off these medications/treatment, which was due to the fact that said treatment was ineffective."[7]  Plaintiff contends that "[d]ue to the ineffectiveness of this treatment…Plaintiff's medical situation has been inadequately addressed" and that he currently suffers from "the irritation of peeling skin, ammonia in the blood, weakness, and dizziness."[8]  Plaintiff alleges that he currently is at the "early fourth state of hepatitis C,"[9] although he does not further indicate what that means.

---

[4] R. Doc. 1.

[5] The undersigned notes that Defendants did not seek dismissal of Plaintiff's state law negligence claims.  Accordingly, all negligence claims against all Defendants in this suit remain.

[6] R. Doc. 1, ¶ 6.

[7] R. Doc. 1, ¶ 6.

[8] R. Doc. 1, ¶ 6.

[9] R. Doc. 1, ¶ 7.

Plaintiff asserts that a "new" medication – Harvoni – is available on the open market and that Harvoni is a "cure" for Hepatitis C.[10]  Plaintiff alleges that he "wrote the medical director, Preety Singh, requesting that he be considered for this new treatment" but that Dr. Preety Singh "never responded to this request."[11]  Thereafter, Plaintiff alleges that he "spoke with nurse practitioner, Ms. Britton about this new treatment, Ms. Britton's response was that this treatment [Harvoni] cost [sic] too much and that Plaintiff would have to wait for something more affordable."[12]  With respect to defendant Nurse Wanda Dupuy, Plaintiff alleges Nurse Dupuy "is responsible for medically treating Plaintiff"[13] and that she "has yet to schedule the Plaintiff to visit with the hepatologist."[14]  Plaintiff further alleges that, in the context of the prison's administrative remedy procedure, Nurse Dupuy reviewed Plaintiff's record "[a]t the first step response" and "stated that no evidence was shown that the Plaintiff had been denied appropriate treatment or access to treatment."[15]  With respect to defendant Secretary LeBlanc, who is the secretary of the DOC, Plaintiff contends that "the Secretary has allowed the Warden and medical personnel, to use a discriminatory and unwritten selectivity policy to pick and choose whom they will consider for the new treatment for hepatitis C."[16]  Plaintiff further asserts that "[a]ccording to these defendants"[17] the treatment involving Harvoni is "too expensive," that Secretary LeBlanc "is

---

[10] R. Doc. 1, ¶ 7.

[11] R. Doc. 1, ¶ 7.  Although the caption of the Complaint also lists Dr. Raman Singh, Plaintiff includes no allegations regarding Dr. Raman Singh in the body of the Complaint.  Plaintiff does not even list Dr. Raman Singh in his numbered paragraph setting out the named defendants.  R. Doc. 1, ¶ 5.  However, it does appear that Dr. Raman Singh was served with the Complaint, R. Doc. 4-1, and as stated above, Dr. Raman Singh has joined with the other defendants herein in moving to dismiss this suit.

[12] R. Doc. 1, ¶ 7.

[13] R. Doc. 1, ¶ 5.

[14] R. Doc. 1, ¶ 11.

[15] R. Doc. 1, ¶ 8.

[16] R. Doc. 1, ¶ 9.

[17] It is not entirely clear to whom Plaintiff refers when he uses the phrase "these defendants."

responsible for the monetary budget that operates the facility in which Plaintiff is being housed," and that Secretary LeBlanc "recently stated that inmates such as Plaintiff was [sic] costing the State too much money for medical care."[18]

Defendants seek dismissal of Plaintiff's claims against them in their official capacities pursuant to FRCP 12(b)(1). With respect to the claims brought against them in their individual capacities, Defendants argue that Plaintiff has failed to state a claim upon which relief can be granted such that dismissal is appropriate pursuant to FRCP 12(b)(6) and that they are entitled to qualified immunity for such claims.

Regarding dismissal pursuant to FRCP 12(b)(1), although Plaintiff alleges in his Complaint that each Defendant "is sued individually in his/her personal and official capacity,"[19] Plaintiff agrees in his Opposition to the Motion to Dismiss that the claims against the Defendants in their official capacities should be dismissed.[20] As a threshold matter, the undersigned recommends that the Motion to Dismiss be granted in part and that Plaintiff's claims against the Defendants in their official capacities be dismissed with prejudice. Accordingly, the undersigned proceeds with an analysis of whether Plaintiff has stated claims against the Defendants in their individual capacities and whether the Defendants are entitled to assert the defense of qualified immunity.

---

[18] R. Doc. 1, ¶ 9.

[19] R. Doc. 1, ¶ 5.

[20] R. Doc. 16, p. 2 ("Plaintiff, being fully aware of sovereign immunity, asks this honorable court, to now, dismiss the Defendants in their official capacity, but to retain the Defendants in their personal capacity."). As this Court recently explained, "§ 1983 does not provide a federal forum for a litigant who seeks monetary damages against either a state or its officials acting in their official capacities, specifically because these officials are not seen to be 'persons' within the meaning of § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). In addition, in *Hafer v. Melo*, 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment. *Id*. at 25. Accordingly, Plaintiff's claim asserted against Defendants in their official capacities for monetary damages is subject to dismissal." *Henderson v. Tanner*, Civil Action No. 15-804, 2017 WL 1017927, at * 2 (M.D. La. Feb. 16, 2017).

## II.     Law and Analysis

### A.  Rule 12(b)(6) Standard and Qualified Immunity

In conducting a Rule 12(b)(6) analysis, the court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."[21]  In order to survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[22]  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."[23]  While factual assertions are presumed to be true, "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are not enough to withstand a 12(b)(6) motion to dismiss.[24]

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks.[25]  Taking the facts as alleged in the light most favorable to Plaintiff, the court considers whether Defendants' conduct violated Plaintiff's constitutional rights and whether the rights allegedly violated were clearly established at the time that the violation occurred.[26]  Under *Pearson v. Callahan*, courts have discretion to decide which of the two prongs of the analysis to address first.  This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general

---

[21] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).

[22] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

[23] *Id.*, 550 U.S. at 555 (internal citation omitted).

[24] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[25] *Huff v. Crites*, 473 Fed. Appx. 398 (5th Cir. 2012).

[26] *See*, *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (concluding that the rigid protocol mandated in *Saucier v. Katz*, 533 U.S. 194 (2001)—that called for consideration of the two-pronged analysis in a particular order—should not be "regarded as an inflexible requirement").

proposition.[27]  The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation that he confronted.[28]

### B.  Deliberate Medical Indifference with Respect to Hepatitis C Treatment

Throughout his Complaint, Plaintiff alleges that Defendants have displayed "deliberate indifference to [his] serious medical needs" and that such indifference violated "Plaintiff's constitutional rights to be free/protected from cruel and unusual punishment, which is prohibited [by the] 8th Amendment and 14th Amendment, U.S. Constitution."[29]  In order for there to be liability in connection with a claim of deliberate medical indifference, an inmate plaintiff must be able to show that appropriate medical care has been denied and that the denial has constituted "deliberate indifference to serious medical needs."[30]  Whether Plaintiff has received the treatment or accommodation that he believes he should have is not the issue.[31]  Nor do negligence, neglect, medical malpractice or unsuccessful medical treatment give rise to a § 1983 cause of action.[32]  Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment.[33]  As stated in *Farmer*, to be liable on a claim of deliberate indifference, an official "must both be aware of facts from which the inference

---

[27] *Saucier v. Katz*, *supra*, 194 U.S. at 201.

[28] *Id*. at 202.

[29] R. Doc. 1, ¶ 9 (as to Defendant LeBlanc).  *See also*, R. Doc. 1, ¶ 10 (alleging Dr. Preety Singh "has shown a deliberate indifference to plaintiff's serious life-threatening medical conditions involving Hepatitis-C" and that defendant's actions violate "the Eighth Amendment, enforceable in this cause by reason of the 14th amendment…."); R. Doc. 1, ¶ 11 (alleging that Nurse Dupuy "has caused the plaintive [sic] to continue experiencing pain and suffering as well as emotional stress" "because of deliberate indifference to Plaintiff's Hepatitis-C disease…."); R. Doc. 1, ¶ 12 (alleging Nurse Britton "has demonstrated a deliberate indifference to plaintiff's serious medical life-threatening situation in relation to his hepatitis C disease" in violation of the Eighth and Fourteenth Amendments.).

[30] *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Johnson v. Treen*, 759 F.2d 1236, 1237 (5th Cir. 1985).

[31] *Estelle v. Gamble*, *supra*.

[32] *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).

[33] *Farmer v. Brennan*, 511 U.S. 825, 839-30 (1994).

6

could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[34]  The deliberate indifference standard sets a very high bar: Plaintiff must be able to establish that a defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."[35]  Further, a mere delay in providing medical treatment does not amount to a constitutional violation without both deliberate indifference and a resulting substantial harm.[36]

In addition to the foregoing, in order for a prison official to be found liable under § 1983, the official must be shown to have been personally and directly involved in conduct causing an alleged deprivation of an inmate's constitutional rights, or there must be shown to be a causal connection between the actions of the official and the constitutional violation sought to be redressed.[37]  Any allegation that a named defendant is responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior* alone is insufficient to state a claim under § 1983.[38]  Further, in the absence of direct personal participation by a supervisory official in an alleged constitutional violation, an inmate plaintiff must be able to show that the deprivation of his constitutional rights has occurred as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies or as a result of a breach by the supervisor of an affirmative duty specially imposed by state law.[39]

---

[34] *Id*. at 837.

[35] *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001), quoting *Estelle v. Gamble*, *supra*.

[36] *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

[37] *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983).

[38] *See*, *Ashcroft v. Iqbal*, 556 U.S. at 676 (2009) (citing *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978)). *See also*, *Bell v. Livingston*, 356 Fed. Appx. 715, 716-17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of respondeat superior or vicarious liability").

[39] *Lozano v. Smith*, *supra*, 718 F.2d at 768.

In *Henderson v. Tanner*,[40] this Court considered the viability of claims similar to those asserted here.[41]  Plaintiff in *Henderson*, an inmate at Elayn Hunt proceeding *pro se*, asserted that his constitutional rights had been violated by defendants' deliberate indifference to his serious medical needs.  Like Plaintiff here, Mr. Henderson alleged that he had been diagnosed with Hepatitis C and had been previously treated with Interferon and Ribovarin.[42]  Mr. Henderson asserted that new medications with very high success rates had been approved (including Harvoni), and that defendants had failed to authorize him to receive the medications, despite his requests, based on cost.[43]  Plaintiff sought monetary damages and moved for injunctive relief, specifically, "treatment with medication that will cure Hep C."[44]  In denying defendants' motion to dismiss pursuant to Rule 12(b)(6) (and in the context of the discussion of qualified immunity), this Court explained, "there are numerous reported decisions that have commented upon the potentially curative effects of medications such as Harvoni (which has been specifically requested by Plaintiff), as well as other recently-approved Hepatitis C medication protocols."[45]  "In many of these cases, a judicial resolution of the inmate plaintiffs' claims that they were not being provided with these medications has been based upon an evidentiary showing made in the context of a

---

[40] Civil Action No. 15-804, 2017 WL 1017927 (M.D. La. Feb. 16, 2017), *report and recommendation adopted*, 2017 WL 1015321 (M.D. La. March 14, 2017).

[41] Similar claims have also been asserted in *Tony Cormier v. John Bel Edwards, et al.*, Civil Action No. 17-241-SDD-EWD.  On August 24, 2018, the District Judge issued a Ruling on defendants' Motions to Dismiss raising issues similar to those analyzed herein.

[42] *See*, 2017 WL 1017927, at * 1.

[43] *Id*. at * 2.

[44] *Id*.  Although Plaintiff here prays only that the court "grant him compensatory and punitive damages, costs and attorney fees, judicial interest running from the date of judicial demand, and award all other proper relief," R. Doc. 1, p. 8, he asserts in the body of his Complaint that he is suing Defendants "for injunctive relief."  R. Doc. 1, ¶ 5.

[45] *Id*. at * 4 (citing *Abu-Jamal v. Kerestes*, 15-cv-967, 2016 WL 4574646, *9 (M.D. Pa. Aug. 31, 2016) ("The standard of care with respect to the treatment of chronic Hepatitis C is the administration of newly-developed DAA medications, such as Harvoni, Sovaldi, and Viekira Pak").  *See also*, *B.E. v. Teeter*, C16-227, 2016 WL 3033500, *1 (W.D. Wash. May 27, 2016) ("Harvoni ... was FDA-approved on October 10, 2014 and has a success rate of achieving 'sustained virological response [ ] of nearly 100%, with little to no side effects'")).

motion for summary judgment or evidentiary hearing."[46]  "Whereas the Constitution does not mandate that Plaintiff be provided with the best medical care that is available, *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992), the law is clear that '[t]he denial or delay of necessary medical treatment for financial or other improper motives not based on medical reasons may constitute an Eighth Amendment violation.'"[47]

### i. Plaintiff Fails to State a Claim Against Dr. Raman Singh

First, with respect to Dr. Raman Singh, Defendants correctly point out that "plaintiff wholly fails to mention Dr. Raman Singh beyond naming him as a defendant."[48]  Although the caption of Plaintiff's Complaint lists Dr. Raman Singh as a defendant, he is not included as a defendant in the body of the Complaint and there are no allegations in the Complaint directed to him.  In opposition to the Motion to Dismiss, Plaintiff asserts that "Dr. Raman Singh…is the medical director for the entire correctional institute for the State of Louisiana" and that in light of his "high" position, he "very likely played a part in the decision-making process of denying Hepatitis C patients the appropriate treatment."[49]  Even if such a conclusory and speculative allegation was contained in the Complaint, it would not be sufficient to state a claim against Dr. Raman Singh.  Plaintiff has not alleged any personal involvement by Dr. Raman Singh (or any other involvement at all) in his Complaint; nor has Plaintiff alleged that Dr. Raman Singh implemented any particular policy or breached any specific duty imposed by state law.  Therefore

---

[46] *Id.* (citing *Phelps v. Wexford Health Sources, Inc.*, Civil Action No. ELH-16-2675, 2017 WL 528424 (D. Md. Feb. 8, 2017); *Fitch v. Blades*, 15-cv-162, 2016 WL 8118192 (D. Idaho Oct. 27, 2016); *King v. Calderwood*, 13-cv-2080, 2016 WL 4771065 (D. Nevada Sept. 12, 2016); *Crigger v. Wright*, 15cv713, 2016 WL 1626580 (E.D. Va. April 20, 2016)).

[47] *Id.* (citing *Hanna v. Correctional Corporation of America*, 95 Fed. Appx. 531, 532 (5th Cir. 2004)).

[48] R. Doc. 10-1, p. 5.

[49] R. Doc. 16, p. 7.

the undersigned recommends that Plaintiff's claims against Dr. Raman Singh be dismissed for failure to state a claim.[50]

### ii.  Plaintiff Fails to State a Claim Against Secretary LeBlanc

Plaintiff alleges that Secretary LeBlanc is "legally responsible for the operations of Elayn Hunt Correctional Center" and "for the welfare of all inmates at that facility."[51]  Plaintiff asserts that Secretary LeBlanc "has allowed the Warden and medical personnel, to use a discriminatory and unwritten selectivity policy to pick and choose whom they will consider for the new treatment for hepatitis C" and that Secretary LeBlanc has "stated that inmates such as Plaintiff was [sic] costing the State too much money for medical care."[52]  Because Secretary LeBlanc is "responsible for the monetary budget," and in light of Plaintiff's contention that he has been denied adequate medical treatment due to the cost of the "new" medication, Plaintiff contends Secretary LeBlanc "has displayed a deliberate indifference to Plaintiff [sic] serious medical needs [AND] that this deliberate indifferences [sic] was manifested through those under his authority…."[53]

"Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability."[54]  "'A supervisory official may be held liable ... only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements

---

[50] *See, e.g.*, *Garrett v. Sulser*, Civil Action 17cv310, 2018 WL 1192996, at * 5 (E.D. Tex. March 7, 2018) ("the Magistrate Judge correctly recommended a dismissal of these claims.  Garrett's claims remain conclusory: He fails to articulate what specific policy [defendant] created or enforced that resulted in a constitutional deprivation."); *Thompson v. Crnkovich*, No. 16-cv-055, 2017 WL 551419, at * 2 (Nov. 16, 2017) ("Without personal involvement or participation in an alleged constitutional violation, or implementation of a deficient policy, the individual should be dismissed as a defendant.").

[51] R. Doc. 1, ¶ 5.

[52] R. Doc. 1, ¶ 9.

[53] R. Doc. 1, ¶ 9.

[54] *Simon v. LeBlanc*, 694 Fed. Appx. 260, 261 (5th Cir. 2017) (per curiam) (quoting *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987)).  *See also*, *Ashcroft v. Iqbal*, 556 U.S. at 676 (2009) (citing *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978)); *Bell v. Livingston*, 356 Fed. Appx. 715, 716-17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of respondeat superior or vicarious liability").

unconstitutional policies that causally result in the constitutional injury.'"[55] "'In order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with deliberate indifference to violations of others' constitutional rights committed by their subordinates.'"[56] "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."[57] "[I]n the absence of direct personal participation by a supervisory official in an alleged constitutional violation, an inmate plaintiff must be able to show that the deprivation of his constitutional rights has occurred as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies or as a result of a breach by the supervisor of an affirmative duty specially imposed by state law."[58] "Supervisory liability can be found to exist if a supervisory official implements a policy so deficient that the policy itself may be seen to be a repudiation of constitutional rights and may be seen to be the moving force behind a constitutional violation."[59]

First, the undersigned finds Plaintiff's allegation that the "Warden and medical personnel [use] a discriminatory and unwritten selectivity policy to pick and choose whom they will consider

---

[55] *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (quoting *Gates v. Texas Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)). *See also*, *Pena v. City of Rio Grande City*, 879 F.3d 613, 620 (5th Cir. 2018) (supervisor liability requires that "(1) [the supervisor] affirmatively participates in the acts that cause the constitutional deprivation, or (2) [the supervisor] implements unconstitutional policies that causally result in the constitutional injury.") (quoting *Gates v. Tex. Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)).

[56] *Id*. (quoting *Gates*, 537 F.3d at 435 (internal quotation marks and citation omitted, alterations in *Gates*)).

[57] *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (quoting *Board of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997)).

[58] *Slay v. Singh*, Civil Action No. 16-756, 2018 WL 1476115, at * 4 (M.D. La. March 8, 2018) (citing *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983)).

[59] *Id*. (citing *Thompkins v. Belt*, 828 F.2d 298 (5th Cir. 1987)). Similarly, "[a] failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (quoting *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir.1992) (discussing the standard in the context of a failure to promulgate adequate policies claim)).

for the new treatment for hepatitis C" to be vague and conclusory.[60]  Plaintiff's allegation does not

allege any details regarding how the policy was either impermissibly selective or discriminatory

(*i.e.*, how, if at all, other inmates were improperly chosen to be considered for treatment with

Harvoni).[61]  Further, Plaintiff has not alleged Secretary LeBlanc's actual knowledge[62] or personal

involvement in Plaintiff's medical care.[63]  Nor, assuming *arguendo* that Plaintiff's allegation

regarding the "unwritten selectivity policy" was sufficient, has Plaintiff alleged that Secretary

LeBlanc affirmatively participated in such policy or implemented such policy.[64]  Even taking

Plaintiff's conclusory allegations as true, such allegations are not sufficient to state a claim against

Secretary LeBlanc under § 1983.[65]

---

[60] *See*, *Spiller v. City of Texas City, Police Department*, 130 F.3d 162, 167 (5th Cir. 1997) (allegation that police department had a policy of "engag[ing] in conduct toward African American citizens without regard to probable cause to arrest" was vague and conclusory).

[61] R. Doc. 1, ¶ 9.

[62] *See*, *Dugas v. Cain*, Civil Action No. 09-177, 2010 WL 4695313, at * (M.D. La. Oct. 20, 2010) ("the mere fact that the plaintiff may have made requests for medical attention in an institution housing more than 5,000 inmates does not establish any particularized knowledge on the part of the supervisory defendants, in the absence of an allegation that the defendants were personally involved in his health care.").

[63] Plaintiff's Complaint refers to "Advocate News Paper" as a (presumably incomplete) citation supporting his assertion that Secretary LeBlanc stated that inmates such as Plaintiff were costing the State too much money in medical care.  R. Doc. 1, ¶ 9.  This reference to a statement in a newspaper article is not the same as Plaintiff's allegation that Nurse Britton stated directly to Plaintiff that the cost of Harvoni was too high.

[64] *See*, *e.g.*, *Hanna v. LeBlanc*, 2017 WL 2198345, at * 9, n. 5 (W.D. La. March 8, 2017) (granting motion to dismiss § 1983 claims against Secretary LeBlanc and noting that plaintiff cited "no specific policies" and instead in opposition to the motion to dismiss alleges "a customary, historical traditional [sic] of deliberate indifference…" and explaining that "for § 1983 liability to trigger, Hanna must allege that Secretary LeBlanc personally implemented specific, unconstitutional policies—which Hanna does not do.").

[65] The undersigned recognizes that in *Henderson v. Tanner*, 2017 WL 1017927, this Court held that a *pro se* prisoner's complaint was sufficient to state a claim against Warden Robert Tanner, Dr. Raman Singh, and Dr. Preety Singh where, although plaintiff did not allege that these defendants were "personally or directly involved in providing him with medical care or treatment" at Elayn Hunt, they were alleged to be "policy-makers who are involved with making policy determinations regarding treatment protocols and regimens available to inmates…."  2017 WL 1017927, at * 4.  This Court denied the motion to dismiss plaintiff's claims against these "policy-maker" defendants, noting that it "further appears that Defendants may be the appropriate supervisory officials to respond to any order for injunctive relief that may be found to be warranted in this case."  *Id*.  Here, unlike the plaintiff in *Henderson*, Mr. Doughty is represented by counsel and his pleadings are not as "liberally construed" as those presented by individuals proceeding *pro se*. *See*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Further, there are no allegations here that Secretary LeBlanc was the policy maker in this instance; instead, Plaintiff has alleged that Secretary LeBlanc "allowed the Warden and medical personnel" to use a "discriminatory and unwritten selectivity policy."  R. Doc. 1, ¶ 9.  Finally, assuming that Plaintiff seeks injunctive relief (since he used the term "injunctive relief" in the body of the Complaint but did not

### iii. Plaintiff States a Claim Against Dr. Preety Singh, Nurse Wanda Dupuy and Nurse Elizabeth Britton

Plaintiff alleges that Dr. Preety Singh is "medical director at the Elayn Hunt Correctional Center…[and] is responsible for the overall medical care that is provided to all inmates in that facility."[66]  With respect to Elizabeth Britton, Plaintiff alleges that Nurse Britton "is a nurse practitioner, working at Elayn Hunt…assigned to the Hepatitis Clinic and is responsible for medically treating plaintiff."[67]  With regard to Wanda Dupuy, Plaintiff alleges that Nurse Dupuy "is a registered nurse, employed at the Elayn Hunt Correctional Center…and is responsible for medically treating Plaintiff."[68]

Plaintiff alleges that he "wrote the medical director, Preety Singh requesting that he be considered for" treatment with Harvoni, and that Dr. Preety Singh "never responded to this request."[69]  Plaintiff contends that Dr. Preety Singh "has shown a deliberate indifference to plaintiff's serious life-threatening medical conditions involving Hepatitis-C, when defendant refused/failed to respond to Plaintiff's letter regarding help to sustain his life."[70]  Plaintiff alleges that he spoke with Nurse Britton about treatment with Harvoni, and that Nurse Britton responded

---

include and request for such relief in his prayer), and that such "injunctive relief" is that Plaintiff be provided with Harvoni, it is not clear that Secretary LeBlanc would be the appropriate supervisory official to respond to such request.

[66] R. Doc. 1, ¶ 5.

[67] R. Doc. 1, ¶ 5.

[68] R. Doc. 1, ¶ 5.  Plaintiff specifically alleges that "at the first step response [of the prison administrative remedy procedure], it was stated that Plaintiff's record had been reviewed by RN Wanda Dupuy, in which she stated that no evidence was shown that the Plaintiff had been denied appropriate treatment or access to treatment."  R. Doc. 1, ¶ 8.  Plaintiff attaches the first step response to his Complaint.  R. Doc. 1-2, p. 4.  The first step response indicates that Nurse Dupuy reviewed Plaintiff's records and that Plaintiff is "non-cirrhotic" and has been seen "in the hepatitis clinic annually for the past three years with a scheduled return date in September…"  R. Doc. 1-2, p. 4.  Plaintiff further alleges that Nurse Dupuy "displayed a deliberate-indifference to Plaintiff's serious medical-life-threatening condition…in that, she falsely states in response to Plaintiff's grievance that Plaintiff is not and has not been denied access to treatment when in fact, just the opposite occurred."  R. Doc. 1, ¶ 11.

[69] R. Doc. 1, ¶ 7.

[70] R. Doc. 1, ¶ 10.

"that this treatment [Harvoni] cost too much and that Plaintiff would have to wait for something more affordable."[71]  With respect to Nurse Britton, Plaintiff contends that she "conspired with the other defendants named in the action, to prolong [sic] treatment to Plaintiff because of the cost of the new treatment pills."[72]  Although Plaintiff's claims against Nurse Dupuy appear to be focused on Nurse Dupuy's first step response to Plaintiff's grievance,[73] Plaintiff has also alleged that Nurse Dupuy is "responsible for medically treating Plaintiff"[74] and that Nurse Dupuy "has yet to schedule the Plaintiff a visit with the hepatologist."[75]

Construing the allegations in the Complaint "in a light most favorable to Plaintiff and accepting them as true,"[76] Plaintiff alleges that he was previously treated with Interferon and Ribavirin for a sixteen week period and that such treatment was ineffective and discontinued.  It

---

[71] R. Doc. 1, ¶ 7.

[72] R. Doc. 1, ¶ 12.  There are no further allegations regarding the purported "conspiracy" alleged in paragraph 12 of the Complaint.

[73] This Court has explained that "the law is clear that any alleged failure to investigate or properly respond to a prisoner's administrative grievance is not a constitutional violation, and no liability may attach as a result of such failure."  *Kyles v. LeBlanc*, Civil Action 16-399, 2017 WL 4080474, at * 4 (M.D. La. Aug. 10, 2017) (citing *Geiger v. Jowers*, 404 F.3d 371 (5th Cir. 2005)).  "Nor is an inmate constitutionally entitled to a fair or favorable response or result in connection with such a grievance.  Thus, Plaintiff may not be heard to complain…regarding the manner in which his administrative proceedings were investigated, conducted or resolved, and there is no constitutional right inherent in such a claim."  *Id*.  *See also*, *Henderson v. LeBlanc*, Civil Action 16-265, 2018 WL 2050149, at * 10 (M.D. La. May 2, 2018) ("The Court finds that what Plaintiff is really alleging against these defendants is that they mishandled his ARP in deliberate indifference to his medical needs, but numerous cases from the Fifth Circuit and this Court have denied such claims….") (collecting cases); *Dugas v. Cain*, Civil Action 09-177, 2010 WL 4695313, at * 5 (M.D. La. Oct. 20, 2010) ("any claim regarding the alleged failure of the defendants to properly address, investigate or respond to his complaints or administrative grievances regarding his medical care is without legal foundation.").  To the extent Plaintiff's claims against Nurse Dupuy are based on her alleged "response to the grievance," Plaintiff has failed to state a viable constitutional claim against Nurse Dupuy; however, in light of the requirement that Plaintiff's allegations be viewed in the light most favorable to him, it also appears that Plaintiff is alleging that Nurse Dupuy is responsible for Plaintiff's medical care and has not scheduled a visit for him with the hepatologist.

[74] R. Doc. 1, ¶ 5.

[75] R. Doc. 1, ¶ 11.

[76] *Henderson v. LeBlanc*, 2018 WL 2050149, at * 15.

does not appear that Plaintiff is currently receiving any treatment for Hepatitis C,[77] despite his allegation that he continues to have ongoing symptoms ("the irritation of peeling skin, ammonia in the blood, weakness, and dizziness").[78] Plaintiff has alleged direct involvement by Nurse Britton, Nurse Dupuy and Dr. Preety Singh in that he alleges that Dr. Preety Singh "refused" to respond to Plaintiff's request to be treated with Harvoni,[79] Nurse Britton denied Plaintiff treatment solely on the basis of cost, and Nurse Dupuy failed to schedule Plaintiff a visit with the hepatologist.

As noted above, "[w]hether the plaintiff received the treatment he felt he should have is not the issue," and "unsuccessful medical treatment does not give rise to a Section 1983 cause of action."[80] However, "[t]he denial or delay of necessary medical treatment for financial or other improper motives not based on medical reasons may constitute an Eighth Amendment violation.'"[81] Here, given that Plaintiff's Complaint can be fairly read to allege that he is currently receiving no treatment for Hepatitis C, continues to have symptoms, and that the denial of

---

[77] The first and second step responses (both attached to Plaintiff's Complaint) indicate that he has been seen in the Liver Clinic on various dates; however, there is no indication that Plaintiff has received any further treatment following the sixteen week course of Interferon and Ribavirin.  *See*, R. Doc. 1-2, pp. 4-5.

[78] R. Doc. 1, ¶ 6.

[79] R. Doc. 1, ¶ 10.

[80] *Banks v. Cain*, Civil Action No. 13-144, 2014 WL 3666314, at * 5 (M.D. La. July 22, 2014) (citing *Estelle*, 429 U.S. 97; *Woodall v. Foti*, 648 F.2d 268 (5th Cir. 1981); *Varnado v. Lynaugh*, 920 F.2d 320 (5th Cir. 1991)).

[81] *Hanna v. Correctional Corporation of America*, 95 Fed. Appx. 531, 532 (5th Cir. 2004).  However, the Fifth Circuit has also stated that "[t]he deliberate indifference standard ... does not guarantee prisoners the right to be entirely free from the cost considerations that figure in the medical-care decisions made by most non-prisoners in our society." *Ward v. Fisher*, 616 Fed. Appx. 680, 684 (citing *Morris v. Livingston*, 739 F.3d 740, 748 (5th Cir. 2014) (citations and quotation marks omitted). Further, "failure to receive the most effective treatment cannot form the basis of deliberate indifference but, rather, sounds in negligence."  *Id*.  (citing *Gobert v. Caldwell*, 463 F.3d 339, 350 n. 33 (5th Cir. 2006)).  *See also*, *Smith v. Williams*, Civil Action No. 16-1545, 2017 WL 991055, at * 1 (S.D. Tex. March 13, 2017) ("Although [t]he denial or delay of *necessary* medical treatment for financial or other improper motives not based on medical reasons may constitute an Eighth Amendment violation, the deliberate indifference standard does not guarantee prisoners the right to be entirely free from the cost considerations that figure in the medical-care decisions made by most non-prisoners in our society. The failure to receive the most effective treatment cannot form the basis of deliberate indifference but, rather, sounds in negligence.") (internal citations omitted) (emphasis in *Smith*).

treatment with Harvoni was due to cost, the undersigned finds that Plaintiff has sufficiently alleged claims against Dr. Preety Singh, Nurse Dupuy, and Nurse Britton to withstand scrutiny under Rule 12(b)(6).   As explained above, this Court has recently cited multiple cases wherein judicial resolution of an inmate's claim that they were not provided with "new" medications for the treatment of Hepatitis C was made in the context of an evidentiary showing in a motion for summary judgment or evidentiary hearing.[82]   The undersigned finds the allegations as set forth in the Complaint are sufficient to withstand Dr. Preety Singh's, Nurse Dupuy's and Nurse Britton's assertions of qualified immunity at the motion to dismiss stage.[83]   Accordingly, the undersigned recommends that Defendant's Motion to Dismiss Plaintiff's § 1983 claims against Dr. Preety Singh, Nurse Dupuy and Nurse Britton in their individual capacities be denied.[84]

### C.   Leave to Amend

Under Federal Rule of Civil Procedure 15(a), leave to amend should be "freely give[n] ... when justice so requires."[85]   The Fifth Circuit has stated:

> In view of the consequences of dismissal on the complaint alone,
> and the pull to decide cases on the merits rather than on the

---

[82] *See*, *supra*, n. 45.

[83] *See*, *Henderson v. LeBlanc*, 2018 WL 2050149, at * 6 (explaining that when determining whether an official is entitled to qualified immunity, the court considers whether the plaintiff has demonstrated a violation of a clearly established federal constitutional or statutory right and whether the official "violated that right to the extent that an objectively reasonable person would have known.") (citing *Golbert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006)); *Cleveland v. Gautreaux*, 198 F.Supp.3d 717, 744-745 (M.D. La. 2016) (explaining that once a defendant raises the defense of qualified immunity, the "plaintiff bears the burden 'to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law,' and denying defense of qualified immunity in the context of a motion to dismiss plaintiff's claims of deliberate medical indifference because "it is axiomatic that conduct which is deliberately indifferent…is *a fortiori* unreasonable" and noting that because the determination of qualified immunity "is considered 'a fact intensive inquiry,' courts have been reluctant to find the defense of qualified immunity proved on papers alone.").

[84] *See*, *Allah v. Thomas*, 679 Fed. Appx. 216, 2017 WL 568313 (3rd Cir. Feb. 13, 2017) (reversing lower court decision granting defendants' motion to dismiss, concluding that the inmate plaintiff "plausibly alleged an Eighth Amendment violation" regarding denial of medication for Hepatitis C); *Cassell v. Griffin*, 16cv122, 2016 WL 5954406 (E.D. Ark. Sept. 22, 2016) (denying defendants' motion to dismiss where plaintiff's request for treatment with Harvoni had been refused, noting that "it is clear that [plaintiff] has pled a viable § 1983 claim[ ]" where plaintiff alleged medical defendants refused to provide him with any further drug treatment of hepatitis C).

[85] FRCP 15(a).

sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.[86]

One district court in Texas articulated the standard as follows:

> When a complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend before dismissing the action with prejudice unless it is clear that the defects in the complaint are incurable. *See*, *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *see also*, *United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004) ("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification ... is considered an abuse of discretion.") (internal citation omitted). However, a court may deny leave to amend a complaint if the court determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face." 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1487 (2d ed.1990) (footnote omitted); *see also*, *Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of Am. Co.*, 195 F.3d 765, 771 (5th Cir. 1999) ("A district court acts within its discretion when dismissing a motion to amend that is frivolous or futile.") (footnote omitted).[87]

Here, although Plaintiff opposed the Motion to Dismiss, Plaintiff has not moved to amend his Complaint. In opposition to the Motion to Dismiss, Plaintiff asserts as to Dr. Raman Singh that his "high position" "very likely played a part in the decision-making process of denying Hepatitis C patients the appropriate treatment."[88] However, Plaintiff's Complaint contains no allegations regarding Dr. Raman Singh. With regard to Secretary LeBlanc, and as discussed above, Plaintiff must allege something more than the Secretary "allowed" others to use a discriminatory and unwritten selectivity policy. Because Plaintiff has not had an opportunity to

---

[86] *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

[87] *Tow v. Amegy Bank N.A.*, 498 B.R. 757, 765 (S.D. Tex. 2013).

[88] R. Doc. 16, p. 7.

amend, the undersigned recommends, in the event this Report and Recommendation is adopted, that Plaintiff be granted a period of twenty-one (21) days in which to cure the deficiencies in the Complaint with regard to the allegations against Dr. Raman Singh and Secretary LeBlanc, if he can do so.

### III.    Conclusion

For the reasons set forth herein, the undersigned **RECOMMENDS** that the Motion to Dismiss[89] be **GRANTED IN PART** and **DENIED IN PART**.

Specifically, the undersigned **RECOMMENDS** that the Motion to Dismiss be **DENIED** as to the § 1983 claims against defendants Dr. Preety Singh, Nurse Wanda Dupuy, and Nurse Elizabeth Britton in their individual capacities.

The undersigned **FURTHER RECOMMENDS** that the Motion to Dismiss be **GRANTED**: (1) dismissing all § 1983 claims brought against all defendants in their official capacities with prejudice; and (2) dismissing the § 1983 claims against defendants Dr. Raman Singh and Secretary James LeBlanc in their individual capacities without prejudice.

The undersigned **FURTHER RECOMMENDS** that, in the event that this Report and Recommendation is adopted, Plaintiff be granted a period of twenty-one (21) days from the date of such adoption to file a Motion to Amend his Complaint to address the deficiencies noted herein with regard to the individual capacity claims against Dr. Raman Singh and Secretary James LeBlanc.

Signed in Baton Rouge, Louisiana, on August 28, 2018.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[89] R. Doc. 10.

18